UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT WORONEC and
JOHN COLLINS,

    Plaintiffs,

v.                                          Case No: 8:18-cv-2244-TBP-AEP

ZACHRY INDUSTRIAL, INC.,

    Defendant.
_____/

**<u>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

This matter is before the Court on "Defendant's Motion for Summary Judgment and Memorandum of Law," filed on September 25, 2020.  (Doc. 55). Plaintiff filed a response in opposition to the motion on October 19, 2020.  (Doc. 59). Based on the motion, response, court file, and record, the Court finds as follows:

**<u>Background</u>**

Plaintiffs Robert Woronec and John Collins worked for Defendant Zachry Industrial, Inc. ("Defendant" or "Zachry").  Tampa Electric Company ("TECO") contracted with Zachry to perform maintenance and repair work on its electric plant in Polk County, Florida.  A "core" group of employees worked at the plant year-round.  During planned outages, typically in the fall and spring of each year, Zachry would hire additional workers or "road hands," who traveled from plant to plant seeking temporary work and received higher rates of pay than the "core" workers

received during non-outage periods. The number of road hands hired depended on how many would be needed for the work TECO authorized Zachry to perform during a particular outage. During outages, Zachry raised the rates of the existing core group but lowered them again after the outage. At the end of an outage, Zachry retained the core members as employees and laid off the road hands.

Woronec worked for Zachary at the Polk power plant as part of the core group during the spring 2016 outage. He had worked for previously, and Zachry hired him again when it acquired the contract in 2014. At the time he left Zachry, Woronec's job classification was "Lead Multicraft I," indicating he was proficient in more than one craft, such as welding and ironworking, and qualified to give direction to other craftspeople. After completion of the spring outage work in 2016, Zachry laid off Woronec along with others. Documentation relating to the layoff indicated that the reason for the layoff was "reduction in force" but also indicated Woronec had a poor attendance record and was not recommended for rehire. Woronec contends that he was laid off at least in part due to absences from work resulting from claimed disabilities, kidney stones and migraines. Woronec also asserts he was laid off because of his age (53 at the time) and in retaliation for complaints or objections he lodged regarding safety issues at the plant.

Collins had worked for Zachry or other maintenance contractors at the Polk plant starting in 2009. In 2014, Zachry hired Collins as a pipefitter, specifically a "Pipefitter 4," the highest level of experience. Collins was also released by Zachry in 2016, and paperwork relating to the layoff indicates problems with attendance

and productivity. He alleges that Zachry laid him off due to age discrimination or in retaliation for complaints lodged by Collins concerning safety issues at the plant.

Plaintiffs Woronec and Collins filed suit against Zachry, alleging that Zachry discriminated against Woronec based on his disabilities, discriminated against both Plaintiffs based on their age, and retaliated against both Plaintiffs for their objections and complaints about safety issues at the plant. Zachry has moved for summary judgment on each of these claims.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable

inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

Woronec alleges Zachry laid him off because of disabilities in violation of the Florida Civil Rights Act ("FCRA") (Counts I and II). Both Plaintiffs allege that Zachry laid them off based on their age in violation of FCRA (Count III), and in retaliation for their complaints about safety matters, in violation of the Florida Whistleblower Act ("FWA") (Count IV). Zachry has moved for summary judgment on each of these claims.

### *Disability (FCRA)*

Claims of disability discrimination under FCRA are governed by the same principles as claims under the Americans with Disabilities Act ("ADA"). *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). In the absence of direct or statistical evidence of discrimination, disability discrimination claims are evaluated using the burden shifting framework of *McDonnell Douglas Corp v. Greer*, 411 U.S. 792 (1973). *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1241-42 (11th Cir. 2001). To avoid summary judgment, the plaintiff must present evidence to establish a *prima facie* case of discrimination. *Id.* at 1242. If plaintiff meets that burden, the burden shifts to the defendant to offer a non-discriminatory reason for

the adverse action. *Id.* If the defendant meets that burden of production, then the plaintiff must present evidence that the proffered reason is pretextual. *Id.*[1]

To establish a *prima facie* case of discrimination, the plaintiff must show that he or she (1) is disabled, (2) is a qualified individual, that is, could perform the essential functions of the job with or without reasonable accommodation, and (3) was subjected to an adverse employment action because of his or her disability. *Holly*, 492 F.3d at 1255-56.

Disability.

First, Defendant argues that Woronec has no evidence of a disability. To show a disability – or "handicap," in FCRA terminology – a plaintiff must establish he or she has a physical or mental impairment that "substantially limits" one or more "major life activities." 42 U.S.C. § 12102(1)(A). Working is a major life activity. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i) (explicitly including "working" as a major life activity). "Determining whether the impairment

---

[1] Woronec asked for accommodation in the form of time off for medical visits and to work away from fibrous insulation, which aggravated his headaches. *See Wood v. Green,* 323 F.3d 1309, 1314 (11th Cir. 2003) (leave of absence might be a reasonable accommodation in some cases); *Groom v. Army Fleet Support, LLC*, No. 1:16-CV-683-MHT-DAB, 2018 WL 2125989, at *4 (M.D. Ala. Apr. 18, 2018), *report and recommendation adopted*, 2018 WL 2123377 (M.D. Ala. May 8, 2018) (reasonable accommodation could include "part-time or modified work schedules") (quoting 45 C.F.R. § 84.12(b)). Woronec does not contend these requests were rejected, even if the resulting absences contributed to his being laid off. Accordingly, the Court views this case as involving an adverse employment action based on a disability rather than a failure to accommodate, and the parties' summary judgment briefing analyzes it as such. Because Woronec's disability claims will proceed to trial, however, the Court will deny summary judgment as to both Counts I (disability discrimination) and Count II (failure to accommodate) and address the failure to accommodate claim at trial.

substantially limits a major life activity is ordinarily a question of fact for the jury. . . .” *Irizarry v. Mid Fla. Cmty. Servs., Inc.*, No. 8:08-cv-454-T-17TBM, 2009 WL 2135113, *3 (M.D. Fla. July 14, 2009). Migraines and kidney stones can constitute "impairments" for purposes of FCRA. *See, e.g., Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 874 (9th Cir. 1989) (migraine could be handicap under Washington disability statute); *Hendry v. GTE N., Inc.*, 896 F. Supp. 816, 824 (N.D. Ind. 1995) (issue of fact presented on whether plaintiff suffering from migraine headaches was disabled).

Zachry argues that Woronec has presented no expert medical evidence to support a finding that he did, in fact, suffer from these conditions and that they constituted "disabilities." Migraines and kidney stones are not obscure conditions outside the common knowledge of the jury. *See Diaz v. Saucon Valley Manor Inc.*, 579 F. App'x 104, 106, 108-09 (3d Cir. 2014) (holding that expert medical testimony was not required to establish that the plaintiff suffered from alcoholism, and contrasting that disease with "some medical condition involving the central nervous system and nobody can pronounce the word and we don't know what it means where we need an expert."). Woronec's testimony regarding his symptoms, together with Dr. Raheem's testimony as his treating pain management physician, are sufficient to allow the jury to find that Woronec in fact suffered from these conditions.

Nor is Woronec required to present expert medical testimony to support his allegation that these impairments constitute disabilities. *See Vaughan v. World*

*Changers Church Intern., Inc.*, No. 1:13-CV-0746-AT, 2014 WL 4978439, at *10 (N.D. Ga. Sept. 16, 2014); 29 C.F.R. § 1630.2(j)(1)(v) ("The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis"). Woronec's testimony and that of Dr. Raheem constitute evidence of disabilities that substantially limited Woronec's ability to work, a major life activity.

<u>Discrimination Because of Disability</u>

Defendant argues that the "ultimate decision maker" at Zachry, plant superintendent Donnie Wheeler, was not aware of these conditions, and therefore a jury could not conclude that Woronec suffered an adverse employment reaction because of a disability. However, Woronec testified that he personally explained to Wheeler that his absences were due to disabilities and medical conditions. Woronec also testified that supervisors Larry Walden and Lee Piester were aware of the conditions and resulting absences. Walden himself testified to his awareness, and there is evidence, albeit conflicting, that Walden and Piester were involved in the decision to lay off Woronec.

Taken in the light most favorable to Woronec, this evidence demonstrates that his disabilities caused him to miss work, and that the reason for these absences was known to individuals at Zachry who participated in the decision to lay him off. Zachry excused these absences at the time they occurred as an apparent "accommodation," but then laid off Woronec in part due to these very absences.

Accordingly, Woronec has presented evidence that he was laid off because of his disabilities, and he has presented a *prima facie* case of disability discrimination under FCRA.

### Non-discriminatory Reason

Because Woronec has established a *prima facie* case, the burden then shifts to Zachry to provide a valid, nondiscriminatory reason for its actions. The Eleventh Circuit has held that a defendant's burden to provide nondiscriminatory reasons for its actions is "a low bar to hurdle." *Flowers v. Troup Cty, Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (internal quotations omitted). The defendant "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Vargas v. Michaels Stores, Inc.*, No. 8:16-cv-1949-T-33JSS, 2017 WL 2931379, at *14 (M.D. Fla. July 10, 2017) (quoting *Weston-Brown v. Bank of Am. Corp.*, 167 F. App'x 76, 80 (11th Cir. 2006)).

Zachry's asserted non-discriminatory reason for Woronec's layoff is that Zachry had to eliminate a number of employees to meet TECO's budget requirements, and Zachry selected Woronec for layoff based on productivity issues and absences from work *other than* his absences due to the claimed disabilities. . By producing a nondiscriminatory reason for its actions, Zachry has met its burden of production, and the burden shifts back to Plaintiff to show that Zachry's proffered reason is pretextual.

Pretext

The Eleventh Circuit has observed that "[a] reason is pretextual only if it is false and the true reason for the decision is discrimination." *Hicks-Washington v. Hous. Auth. of City of Fort Lauderdale*, 803 F. App'x 295, 303 (11th Cir. 2020). Evidence of pretext must be enough to "allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable." *Callahan v. City of Jacksonville, Fla.*, 805 F. App'x 749, 753 (11th Cir. 2020) (quoting *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). The plaintiff must "demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 (11th Cir. 2008) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

While Zachry has asserted a valid, non-discriminatory reason for its action, there is record evidence to indicate that this reason is pretextual.

First, Zachry's articulation of the reason for Woronec's layoff has varied over time. As indicated above, contemporary documentation relating to the layoff reflects attendance and performance issues, as well as the reduction in force situation. Later in 2016 and in 2017, however, Zachry told OSHA that Woronec's layoff was based solely on "economic factors," specifically the reduction in the number of positions, with no mention of productivity or attendance issues. This

reason was repeated in Zachry's February 2019 answers to interrogatories. Zachry's assertion of productivity and attendance issues thus reappears rather late in the game and arguably conflicts with its "economic factors" rationale.

Second, there is no evidence that Woronec was ever written up or formally reprimanded or disciplined for general productivity or attendance issues. His layoff paperwork expressly stated that he had met expectations with regard to productivity.[2]

Third, contrary to Zachry's current position that Woronec was let go because of absences other than those relating to his disabilities, there was evidence that Wheeler, the plant superintendent, did not care *why* an employee was absent – he simply had a zero tolerance policy for missing too much work. There is also evidence that the "other" absences included approved vacation time and approved dental appointments. A reasonable jury could find that Zachry's attempt to distinguish between different categories of absences is not credible and that Woronec was terminated because of disability-related absences.

For the foregoing reasons, genuine issues of material fact preclude summary judgment on Woronec's disability claim.

---

[2] When Woronec was advised verbally that his absences had drawn Wheeler's attention, he went to Wheeler and told him that the absences were due to medical conditions and disabilities. Woronec was written up by one supervisor for an incident where he left work to go to the hospital without telling the supervisor personally. Woronec explained that the situation was an emergency and that he had tried to reach the supervisor without success.

*Age Discrimination (FCRA)*

Plaintiffs have sued Zachry for age discrimination under FCRA.  These claims are governed by the same principles that apply in suits under the federal Age Discrimination in Employment Act ("ADEA").  *See Woolsey v. Town of Hillsboro Beach*, 541 F. Appx 917, 918 n.1 (11th Cir 2013).  The parties agree that this claim is analyzed under the burden-shifting framework of *McDonnell Douglas* because there is no direct evidence of age discrimination  Plaintiffs must establish that (1) they were members of a protected age group, (2) that they were subjected to an adverse employment action, (3) that they were qualified to do the job, and (4) that Zachry treated similarly situated but younger employees more favorably or that Plaintiffs were replaced by or otherwise lost their position to younger individuals. *See Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000); *Hawthorne v Baptist Hosp., Inc.*, 448 F. App'x 965, 968 (11th Cir. 2011) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir 2003)).  If Plaintiffs meet this burden, then Zachry must articulate a legitimate, non-discriminatory reason for the challenged action.  *Chapman*, 229 F.3d at 1024-25.  The burden then shifts back to Plaintiff to provide evidence that the proffered reason is a pretext for age discrimination.  *Id*.

Here, Plaintiffs have failed to present a *prima facie* case because they have pointed to no evidence that Zachry treated similarly situated but younger

employees differently or that Plaintiffs were "replaced" by younger employees.[3] To show that employees are similarly situated, the plaintiff must show that the "employees are similarly situated in all relevant respects . . .." *Knight*, 330 F.3d at 1316. To show that Plaintiffs were replaced by younger individuals, they must present evidence they had similar skills, were hired to perform similar tasks, and had a similar relationship to other employees as did the younger individuals. *See Kelsey v. Donley*, 09-21125-CIV-UNGARO, 2010 WL 1768577, at *7 (S.D. Fla. May 4, 2010) (citing *Beaver v. Rayonier, Inc.,* 200 F.3d 723, 728 (11th Cir.1999)); *Israel v. Sonic-Montgomery FLM, Inc.*, 231 F. Supp. 2d 1156, 1161 (M.D. Ala. 2002) (noting that titles are relevant but not determinative); *see also Mazzeo*, 746 F.3d at 1270-71 ("A plaintiff may demonstrate that he was replaced by showing that, after his termination, some of his former responsibilities were delegated to another employee, in addition to that other employee's own responsibilities.")

---

[3] The number of Zachry's employees at the Polk plant rose during outages based on TECO's requirements. After an outage, TECO provided Zachry with a new budget, which in turn dictated the number of employees and types of crafts needed. Plaintiffs were laid off during such a "reduction in force" following an outage. In a "reduction in force" situation, unless the plaintiff presents evidence that he or she was in fact replaced by a younger individual, the plaintiff must present evidence from which a reasonable jury could conclude that age actually played a factor in the decision to lay off the plaintiff. *See Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1271 (11th Cir. 2014); *Mitchell v. City of LaFayette*, 504 F. App'x 867, 870 (11th Cir. 2013) ("The evidence must lead the factfinder to reasonably conclude either that the employer consciously refused to consider retraining or relocating the plaintiff due to his protected-class membership, or that the employer considered his protected-class membership as a negative factor in that consideration."); *Connor v. Bell Microproducts-Future Tech, Inc.*, 492 F. App'x 963, 965 (11th Cir. 2012). Plaintiffs contend that what occurred here was not a reduction in force, because Plaintiffs were chosen to be laid off based on perceived performance and attendance issues. In essence, Plaintiffs assert they were terminated. For the reasons discussed herein, Plaintiffs have failed to present evidence to meet either the basic or the "reduction in force" standard. The distinction therefore does not impact the Court's ruling on this claim.

Plaintiffs point to three younger individuals who were employed by Zachry at the same time as Plaintiffs but were then retained after the spring 2016 outage when Woronec and Collins were laid off. Those individuals were Josh Smith, Victor Cordero, and Daran Hightower. Plaintiffs, however, have presented no evidence showing that these individuals were similarly situated or "replaced" either of the Plaintiffs in any meaningful sense.

Smith, for example, had extensive prior experience at the Polk plant (under other companies who held the maintenance contract). He was hired initially as a welder but had been a certified crane operator, a skill that Zachry valued because it needed someone who could fill in when the regular crane operators were absent. His license had lapsed at the time Zachry hired him, but at the urging of the plant superintendent Donnie Wheeler, he began studying to reacquire his license and was allowed to operate cranes in the meantime. *See Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1316 (11th Cir. 1998) (hires during month of RIF were "were critically skilled in areas that Watkins and Mallory were not . . . "). He was not a "lead multicraft" like Woronec, nor a pipefitter like Collins.

Cordero was a pipefitter like Collins, but held a different pipefitting classification, Pipefitter 1, as opposed to Collins's Pipefitter 4. Workers at the plant performed a variety of tasks on an as-needed basis, some of which required particular skills or classifications they possessed, while others did not. Plaintiffs point to no evidence as to Cordero's performance as compared to that of Collins or of

his specific duties after the outage or the extent to which they overlapped those of Collins.

Hightower was a foreman during the spring 2016 outage and was Collins and Woronec's supervisor. He continued in the foreman position after they left Zachry. Hightower therefore was not similarly situated to Plaintiffs nor did he replace them at the end of the outage. Plaintiffs' arguments that these individuals were – in Plaintiffs' view – "less qualified" or "less experienced" is beside the point. Plaintiffs' burden is to show that they were similarly situated or replaced by younger workers. On this record, that burden has not been met. Because Plaintiffs have failed to present a *prima facie* case, the Court does not reach Zachry's other arguments. Accordingly, summary judgment will be granted on Count III.

### *Retaliation (FWA)*

Defendants also argue that Plaintiffs cannot establish a *prima facie* case of retaliation under the FWA. Under the FWA, "[a]n employer may not take any retaliatory personnel action against any employee because the employee has . . . [o]bjected to or refused to participate in, any activity, policy, or practice of the employer which is a violation of a law, rule, or regulation." § 448.102(3), *F.S.* To establish a claim for retaliation under the FWA, a plaintiff must prove that: (1) he or she objected to or refused to participate in an illegal activity, policy, or practice of the defendant; (2) he or she suffered an adverse employment action; and (3) the adverse employment action was causally connected to the objection or refusal.

*Gleason v. Roche Laboratories, Inc.*, 745 F. Supp. 2d 1262, 1270 (M.D. Fla. 2010); *see Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

<u>Illegal Activity, Policy, or Practice</u>

Zachry argues that Plaintiffs must establish an actual violation of a law or regulation, such as an OSHA safety standard, to prevail on a retaliation claim. As a corollary, Zachry also argues that Plaintiffs must point to a specific law or regulation violated by the workplace conduct they complained about or refused to participate in. Plaintiffs argue that they need only present evidence of a subjective, good faith belief that a violation occurred.

Florida courts disagree on the scope of statutory protections under the FWA. The Fourth District Court of Appeal requires only that an employee show "a good faith, objectively reasonable basis to believe" that the employer was engaged in a violation. *See Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013). The Second District Court of Appeal, in contrast, limits the FWA's protections to employees who object to actual violations of a law, rule, or regulation. *See Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 463-65 (Fla. 2d DCA 2015).

The Florida Supreme Court has not spoken on this issue. The Court tends to believe that the approach in *Kearns*, requiring demonstration of an actual violation, is more consistent with the statutory language and that the Florida Supreme Court would so decide if the issue were presented to it. *See Kearns*, 157 So. 3d at 463 ("The statute is plainly worded as requiring the plaintiff to prove conduct that is *in violation* of the law, and courts have held that in conformity with the plain wording

of the statute, an actual violation of law is required."); *see also Page v. Deutsche Bank Tr. Co. Americas*, No. SC19-1137, 2020 WL 7778183, at *4 (Fla. Dec. 31, 2020) ('The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means.' ") (quoting *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020)).  Plaintiffs, however, argue that the position taken by the Second District in *Kearns* is dictum, and that *Aery* therefore controls on this issue of Florida law.

Plaintiffs have pointed to actions that might well be violations of laws or regulations but have not attempted to demonstrate or explain why they are in fact violations, choosing instead to argue only that the *Aery* approach is the correct one. Nevertheless, given the unsettled nature of the standard, and the possibility that Plaintiffs may well be able to show actual violations, the Court believes that its determination of this legal issue and its application to the facts would benefit from a more complete record regarding the alleged violations.  A district court has the discretion to deny summary judgment where the case would benefit from a full hearing and the better course would be to proceed to trial.  *See, e.g., Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001); *Kalamas v. Ross*, No. 8:16-cv-563-T-26JSS, 2017 WL 6344450, at *4 (M.D. Fla. Dec. 12, 2017).  The Court therefore denies summary judgment as to this issue.[4]

---

[4] If the Court decides that the *Kearns* standard applies, then to avoid judgment as a matter of law, Plaintiffs will have to point to violations of specific laws or regulations that actually occurred.  Even if the more lenient, "reasonable belief" standard of *Aery* were to apply, the Court will require more than Plaintiffs' conclusory assertion of their belief that conduct

Causation

As Zachry points out, Plaintiffs must demonstrate that the alleged retaliator knew about their objections to the alleged violations.  *See Bush v. Raytheon Co.*, No. 8:07-cv-2087-T-24MAP, 2009 WL 10669904, at *7 (M.D. Fla. Sept. 8, 2009), *aff'd*, 373 F. App'x 936 (11th Cir. 2010).  Zachry argues that Wheeler, the plant superintendent, made the decision to lay off Plaintiffs, and the safety complaints were not made to him.  Plaintiffs, however, testified that their complaints and objections to safety violations were made to their supervisors Piester and Walden, and Wheeler testified that these two participated and actually "voted" along with Wheeler not to retain Plaintiffs.  This creates an issue of fact on causation.

Non-discriminatory Reason and Pretext

Finally, Zachry argues that it had legitimate, non-retaliatory reasons for letting Plaintiffs go, based on attendance and productivity.  For the reasons set forth above in connection with Woronec's disability discrimination claim, there is sufficient evidence from which a jury might conclude that Zachry's proffered reasons for the layoffs were pretextual.  Accordingly, summary judgment will be denied on Plaintiffs' FWA claim.

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

---

they observed constituted a "violation" of an unspecified law or regulation in order to make out a case for the jury.

(1) "Defendant's Motion for Summary Judgment and Memorandum of Law" (Doc. 55) is **GRANTED IN PART** and **DENIED IN PART.**

(2) The motion is **GRANTED** as to Count III.

(3) The motion is **DENIED** as to Counts I, II, and IV.

(4) The Court will enter a final judgment once all claims have been resolved.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 12th day of February, 2021.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**